IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RASHEED X. JAMES,                 )
                                  )     Civil Action No. 09 - 1165
            Plaintiff,            )
                                  )     District Judge David S. Cercone
v.                                )     Magistrate Judge Lisa Pupo Lenihan
                                  )
D. M. CHAMBERLAIN,                )
Superintendent,                   )
                                  )
            Defendant.            )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.        RECOMMENDATION**

It is respectfully recommended that Defendant's Motion to Dismiss (doc. no. 9) be granted.

**II.       REPORT**

Plaintiff, Rasheed X. James, a *pro se* inmate currently housed at the State Correctional Institution at Pittsburgh (SCIP), brings this civil rights action under 42 U.S.C. §1983 alleging violations of his Fourth and Eighth Amendment rights in connection with the presence of a video camera during a strip search on August 17, 2009.  The sole Defendant in this action is Superintendent D. M. Chamberlain.

A. Standard of Review - Motion to Dismiss Under Rule 12(b)(6)

A complaint must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff.

Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S.  265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp., 550 U.S. at 555. Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." ' Coronado v. Goord, No. 99 Civ. 1674, 2000 WL 1372834, at *2 (S.D.N.Y. 2000) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)).

Courts consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss.  Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  In addition, factual allegations within documents described or identified in the complaint may be considered if the plaintiff's claims are based upon those documents.  *Id.* (citations omitted).  A district court may consider these documents, as well as indisputably authentic documents, without converting a motion to dismiss into a motion for summary judgment.  Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972).

## B. Plaintiff's Allegations

According to the complaint, while being strip searched prior to having visitors on August 17, 2009, Plaintiff noticed a video camera in the strip search room. When asked if it was operable he was told "yes" by C. O. Jones.  When he returned from the visiting room, Plaintiff claims that several corrections officers were commenting on how many complaints had been made about the camera.  When he spoke with C. O. Mandella he was informed him that the issue was reported and that it would be taken up with security and appropriate administrators in the morning.

On that same date, Plaintiff filed Grievance No. 285412 complaining about the camera (doc. no. 9-1, p.2).  On August 26, 2009, Captain Gregory Mohring responded to this grievance informing Plaintiff that the camera had been removed and that there were no recordings of the search (doc. no. 9-1, p. 3).  The response further indicated that the grievance was resolved.

## C. Failure to Have Exhausted Administrative Remedies

Defendants' first basis for dismissal is Plaintiff's alleged failure to have exhausted available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996).  In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners.  Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit.  The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

> (a)     Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

> administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner).  In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions.  In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement.  Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66.  A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures.  In addition, in Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

The administrative grievance procedure for Pennsylvania inmates is codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System."  The purpose of the grievance system is to insure that DOC inmates have an avenue through which prompt resolution of any problem which arises during the course of confinement may be sought.  DC-ADM 804 ¶ 1.  The grievance system applies to all state correctional institutions and provides three levels of review:  1) initial review by the

facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the Secretary's Office. DC-ADM 804 ¶ VI. The administrative policy further provides that, prior to utilizing the grievance system, prisoners are required to attempt to resolve problems on an informal basis through direct contact or by sending an inmate request slip to the appropriate staff member. DC-ADM 804 ¶ V.

A prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court. *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Defendants argue that Plaintiff's Complaint should be dismissed because Plaintiff did not appeal his grievance to the Superintendent and then on the final review. However, Plaintiff 's Grievance No. 285412 was resolved in his favor on August 26, 2009. Thus, there was no basis for Plaintiff to have filed an appeal. The exhaustion requirement in the PLRA was promulgated to facilitate early resolution of a prisoner's claims by the appropriate prison officials. This is precisely what happened in the instant action. Only when the claim is denied must a prisoner file an appeal through all three levels of review. Consequently, Defendants are not entitled to dismissal of the Complaint based upon Plaintiff's failure to have appealed Grievance No. 285412.

**D. Liability under 42 U.S.C. § 1983**

Plaintiff's Complaint seeks to assert liability against Defendant pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451

U.S. 527, 535 (1981), *overruled in part on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have <u>personal</u> involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988); <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. <u>Rode</u>, 845 F.2d at 1207.

The mere hypothesis that an official is personally involved in complained of conduct "simply because of his [supervisory] position" is an insufficient basis for finding Section 1983 liability. <u>Evancho v. Fisher</u>, 423 F.3d 347, 354 (3d Cir. 2005) (allegations of personal liability on the part of the state Attorney General were insufficient where plaintiff did not specifically allege that the A.G. ordered the acts of his "underlings," or had acquiesced to those acts with contemporaneous knowledge of them). To impose liability on a supervisory official there must be "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate." <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (emphasis added).

There is no allegation that Defendant Chamberlain was involved in any fashion in the

alleged wrongdoing.  Thus, there is no basis upon which to impose liability against him under 42 U.S.C. § 1983.

Moreover, supervisory liability still requires an underlying constitutional violation. City of Los Angeles v. Heller, 475 U.S. 769, 799 (1986); Camp v. Brennan, 54 Fed. App'x 78, 81-82 (3d Cir. 2002).  The discussion below shows that Plaintiff's allegations do not show a constitutional violation.

1.      Fourth Amendment

Plaintiff seeks to impose liability under the Fourth Amendment, which provides as follows.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

First, the Fourth Amendment's proscription against unreasonable searches does not apply to a prisoner's cell or to prisoner's property.  *See* Hudson v. Palmer, 468 U.S. 517, 526 (1984) (holding that an inmate has no reasonable expectation of privacy in his prison cell entitling him to the protections of the Fourth Amendment).  Second, inmates retain only a "limited right to bodily privacy" under the Fourth Amendment.  Covino v. Patrissi, 967 F.2d 73, 78 (2d Cir.1992) .  To the extent that Plaintiff is trying to raise a Fourth Amendment claim regarding the possibility of the video camera to reveal Plaintiff's naked body, such actions must be considered under the Eighth Amendment; extending a Fourth Amendment remedy to Plaintiff is unwarranted.  *See* Perez v. Hewitt, Civ. No. 04-10112, 2008 WL 780628, 3 (S.D.N.Y. March 24, 2008) (quoting Hudson, 468

U.S. at 530) ("Our holding that respondent does not have a reasonable expectation of privacy enabling him to invoke the protections of the Fourth Amendment does not mean that he is without a remedy.... The Eighth Amendment always stands as a protection against cruel and unusual punishments."); Peckham v. Wisconsin Dept. of Corrections, 141 F.3d 694, 699 (7th Cir. 1998) (J. Easterbrook concurring) ("What Hudson and Johnson hold is that convicts lack any reasonable expectation of privacy that may be asserted against their custodians and that searches of cells and other places where contraband may be hidden, including the space under one's clothing, need not be justified by any particular quantum of suspicion. That principle should not be impugned.").

But even if Defendant Chamberlain did order the installation of the camera, Plaintiff's allegations of an isolated incident of video taping, without any evidence that such tape was even viewed by anyone, is insufficient to state a claim for violation of his privacy rights under the Fourth Amendment.

A prisoner may have a limited right not to be viewed naked by a member of the opposite sex. Johnson v. Pa. Bureau of Corrections, 661 F.Supp. 425, 431 (W.D. Pa. 1987). However, Plaintiff does not allege that anything like that happened on August 17, 2007 or anytime thereafter. Moreover, an inadvertent encounter or isolated incident does not rise to the level of a constitutional deprivation. Id. at 432. Here, the record shows that no recordings of the search were ever made or viewed by anyone. Thus, Plaintiff's allegations, construed in the broadest possible sense, do not rise to the level of a Fourth Amendment violation.

2.        Eighth Amendment

Finally, Plaintiff alleges liability under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments."  This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement.  In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Notwithstanding, not every injury raises constitutional concerns.  A prison official violates the Eighth Amendment only when two requirements are met.  The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. Farmer, 511 U.S. at 834.  The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." Id.  In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind.  The Supreme Court clarified this deliberate indifference standard in Farmer as follows.

> We reject petitioner's invitation to adopt an objective test for deliberate indifference.  We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>.  This approach comports best with the text of the Amendment as our cases have interpreted it.  The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."  An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . .  But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Farmer</u>, 511 U.S. at 837-838 (emphasis added).

Plaintiff's allegations do not show that he was deprived of any basic human need such as food, clothing, shelter, sanitation, medical care or personal safety.  Nor do they show that Defendant Chamberlain acted, if at all, with deliberate indifference.  The Constitution does not mandate comfortable prisons.  <u>Rhodes</u>, 452 U.S. at 349.  Prisons housing "persons convicted of serious crimes cannot be free of discomfort." *Id*.  Again, Plaintiff's allegations, construed in the broadest possible sense, do not rise to the level of a Eighth Amendment violation.  Consequently, Defendant's Motion to Dismiss should be granted.

III.       <u>CONCLUSION</u>

It is respectfully recommended that Defendant's Motion to Dismiss (doc. no. 9) be granted.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen

10

days from the date of the service of this report and recommendation to file written objections thereto.

Any party opposing such objections shall have fourteen days from the date on which the objections

are served to file its response.  A party's failure to file timely objections may constitute a waiver of

that party's appellate rights.  *See* <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

_____
Lisa Pupo Lenihan
U.S. Magistrate Judge

March 31, 2010

cc:        Rasheed X. James
           GP - 9910
           S.C.I. Pittsburgh
           P.O. Box 99991
           Pittsburgh, PA  15233

           Counsel of record